**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| vs. | : CRIMINAL NO. 3:18-CR-15(JCH) |
| RASCELL LEGGETT | : December 26, 2018 |

## **DEFENDANT'S SENTENCING MEMORANDUM**

As the parties agree, and for the reasons articulated below, a Guidelines sentence of 60 months' incarceration is sufficient to achieve the goals of sentencing in this case.

## **BACKGROUND**

Rascell Leggett's childhood memories of his father were formed on the street corners of Hartford, where Rascell saw his father high on heroin or cocaine. What Rascell saw was that his father cared more about the drugs than about his son, and his father today recognizes that his addictions made him "forget about my loved ones." PSR ¶ 38. With his father failing to be there for his son due to addiction and recurrent incarceration, Rascell's mother and her family were left to care for him. As reflected in the PSR, Rascell's mother worked hard, but even while living in public housing she was barely able to make ends meet. PSR ¶¶ 40, 41. And as the PSR further articulates, Rascell as a child fell between the gaping cracks in his network of support and supervision.

For a brief period in Rascell's teenage years, the fabric of his familial life seemed to show signs of mending: his father returned home from prison and got a job (which he has held to this day). His parents married and had another child. But in important ways these elements of stability came too late. Until his father re-entered his life as a newly productive citizen, Rascell "never previously had a male role model and found it very difficult to suddenly be 'told what to do' by a

father who he did not know." PSR ¶ 44. Rascell had even as a child learned to see himself as the "man of the house" and struggled with his father's belated assumption of that title. *Id*.

This domestic stability, at any rate, was not to last. By the time Rascell was 17, his parents had returned to fighting, and his father moved out of the family home. PSR ¶ 45. His mother had lost her job after the birth of Rascell's younger brother, exacerbating longstanding financial vulnerabilities. And as the PSR states, "by early 2003 [Rascell] had started selling marijuana, which was then quickly followed by crack cocaine sales. Mr. Leggett noted that after his father moved out in 2003, with his mother being laid off, she and his grandmother began having problems paying the rent. He wanted to be able to contribute and wanted to be 'the man of the house.' He used some of the proceeds from his drugs sales to do so." PSR ¶ 46.

As the PSR further outlines, Rascell's early adulthood followed the pattern set by his father, and Rascell found himself in and out of custody. By 2015, however, Rascell (like his father before him) had begun taking steps towards departing from that pattern. He got married. He found employment. But in other respects the old patterns persisted, and Mr. Leggett again ended up in custody. Soon after his release in early 2017, he discovered that his wife was cheating on him with his employer, sending him into a tailspin of addictive behavior:

> Mr. Leggett offered that when he was involved in a relationship with his wife, he really "looked down" on addicts and noted he never thought he, himself, would be a person who would turn to drugs and become addicted. He indicated that following his separation from his wife, "I was a mess, there was a black cloud over me." Mr. Leggett stated, "I ran to drugs with fake people I thought were friends. I used so I didn't have to think about my wife. I had a chance to listen, to do things the right way, but I let my broken heart take me the wrong way. I look at myself like a fool. I had a good PO [probation officer], but I wasn't being real with myself or her. I was scared to be labeled a 'junkie,' I was in denial. I had things that could have worked in my favor – Judge Meyer, Reentry Court, my probation officer, my attorney. Fear led me back to jail. I messed up."

PSR ¶ 61.

Specifically, Mr. Leggett turned to pills—first ecstasy and then Percocet. Several ensuing state arrests then led to federal supervised release violation proceedings. Realizing that for the first time in his life he could not handle the prospect of returning to custody, Rascell panicked and took a series of actions that assured that he *would* return to custody. He failed to appear at a scheduled supervised release hearing. His opiate addiction ratcheted up. And as Rascell stated in his presentence interview,

> he was using drugs, he had no money of his own and had largely pushed all his social supports away. He stated he was scared to be sent back to jail without any money and without anyone supporting him on the outside. Mr. Leggett then returned to his old ways to make fast money. Mr. Leggett stated, "everything was a mess," and he was nervous to "be real" with the Court and admit what was happening to him.

PSR ¶ 19.

These were doubtless bad decisions, but a year later Mr. Leggett is now able to look back on them with dawning maturity and sobriety. Just as his own father—now long past his own days of incarceration—looks back at the ways in which he was not there for those he cared about, Rascell now sees (belatedly) the ways in which his actions harm not only himself, but also the people who have come to depend on him:

> When asked how he is coping with the instant prosecution, Mr. Leggett remarked he "feels sick." He stated "the time I've been in feels different, it's hard to describe, enough is enough, jail is killing me. Before, I was young and just did my time. This time its crushing my loved ones. Now I feel it more. Before I didn't have a relationship with my daughter, my step-kids, people that look forward to me being there and I'm not. I'm hurt, seeing them hurt."

PSR ¶ 68.

**A GUIDELINES SENTENCE OF FIVE YEARS SATISFIES THE PURPOSES OF SENTENCING.**

The Guidelines in this case call for a sentence of 60 months' incarceration, which the parties agree is sufficient to achieve the dictate of 18 U.S.C. § 3553(a) that the Court "shall impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. As the Second Circuit explained in *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006), the consequence of this provision is that if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, it must choose the lower sentence.

Here, Mr. Leggett's reflections captured in the PSR show both that at the time of the offense he needed a dramatic intervention and that his arrest and detention have been just that. Rascell grew up in a world in which drugs, poverty, and instability were both a pervasive part of his environment and defining features of his family life. Like many others in similar predicaments, at too young an age he felt driven to fill the vacant position of "man of the house," leading him to pursue a path that has begun to leave him, like his own father, absent from his own responsibilities as an adult with family obligations.

But Rascell's father is not just a cautionary tale. He is also, at this point in Rascell's life, a model for his son to follow as he, too, looks forward to an adulthood beyond incarceration and addiction. As Rascell puts it, incarceration this time "feels different . . . enough is enough, jail is killing me." PSR ¶ 68. Where prior incarcerations were previously for Rascell a part of normal life, he has for the first time experienced the weight of incarceration as a destroyer of "normal life," not just for himself but also for the people he cares about. This realization will not take five years to set in. It is something that Rascell has already experienced. This revelation comes too late to avoid the

repercussions of his past actions, and his incarceration in this case will likely be meaningfully longer than any he has previously served.[1]

The sentence proposed by the parties will, additionally, consume much of what remains of Mr. Leggett's 30s. In so doing, it will return Mr. Leggett to the community at an age in which, statistically, recidivism rates stop climbing and instead begin a steady drop. As research shows, the risk of assaultive behavior peaks around age 30; the risk of alcohol/drug crime begins its decline in the late 30s.[2] This statistical trend is one borne out in Mr. Leggett's own life by the example of his

---

[1] Mr. Leggett has previously served a 60-month term of incarceration. However, even leaving aside the sentence to be imposed in connection with Mr. Leggett's supervised release violation, the effective term of incarceration imposed in this case will be effectively extended by the fact that Mr. Leggett spent nearly 11 months in state custody following his arrest for the conduct giving rise to his sentencing in federal court. Assuming this period of pretrial detention is credited towards his sentence on pending state charges, it will not be credited towards his federal sentence by the Bureau of Prisons. And while the Sentencing Guidelines contemplate that a sentencing court may address this problem by modifying the sentence imposed, here the parties jointly propose a sentence consistent with the statutory mandatory minimum. The 60-month sentence, under these circumstances, is in real terms akin to a 71-month sentence.

[2] Sampson, Robert J., and John H. Laub. "Life-Course Desisters? Trajectories Of Crime Among Delinquent Boys Followed To Age 70." Criminology 41.3 (2003): 555-592 at 571.



father, who in the early 2000s (then in his mid-30s) returned from prison to begin what has become nearly a 20-year career at a furniture store.

With support from people like his father, his current partner, and the United States Probation Office, at the end of the sentence the parties propose, Mr. Leggett will be in a position to become for himself the success story that his father has been. And unlike his father, Rascell will have accesses to resources like Reentry Court, a program that Rascell recognized, in the brief time he participated, could connect him with a network of community members outside narrow and often confining bounds of the world that Rascell grew up in.

There are, in short, serious consequences, here and in state court, that will flow from Mr. Leggett's past actions. But the sentence proposed by the parties is also one that will leave room for Rascell, like his father, to embrace a future that deliberately and decisively leaves the past behind.

    Respectfully Submitted,

    THE DEFENDANT,
    Rascell Leggett

    FEDERAL DEFENDER OFFICE

Date: December 26, 2018    /s/ James Maguire
    Assistant Federal Defender
    265 Church Street, 7th FL
    New Haven, CT 06510
    Phone: (860) 498-4200
    Bar No.:
    Email: james_maguire@fd.org

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 26, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                        /s/ James Maguire
                                        James Maguire