UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 3:18CR15 (JCH) |
| v. | : | |
| | : | |
| RASCELL LEGGETT | : | January 23, 2019 |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The Government respectfully submits this Sentencing Memorandum with regard to defendant Rascell Leggett, a.k.a. "Cell," "Bigs," and "Fat Ass" (the "defendant" or "Leggett") who is to be sentenced on January 28, 2019, at 10:00 a.m.

I.   **INTRODUCTION AND BACKGROUND**

There is a clear need to protect the community from Rascell Leggett's dangerous and violent conduct.   A long time drug dealer, Leggett has shown no inclination to change his criminal behavior.   Indeed, he was recently disciplined at Wyatt Detention for having contraband mailed to him under the guise of legal mail.   He has served multiple prison sentences, including a five year federal sentence, escaped from a BOP halfway house, committed multiple offenses while on supervision, and repeatedly used illegal substances while on supervision.   He now stands convicted of a serious firearm offense that mandates a prison term of 60 months, and a felony assault offense in Hartford Superior Court where he fired his gun at a vehicle occupied by a young boy and his mother.   And he committed these offenses while on federal supervised release and State probation.   Leggett has made it clear that rehabilitation is not his goal.   Whatever sentence the Court imposes here, or that is imposed in Superior Court, Leggett is a high risk of recidivism. Accordingly, protection of the community should be the principal goal in determining what

1

sentence should be imposed.

II.    **FACTS AND CIRCUMSTANCES OF DEFENDANT'S CONDUCT**

On October 7, 2017, Leggett was arrested in connection with a shots fired report and ensuing motor vehicle pursuit.   Leggett was released on bond.   Thereafter, detectives from the Hartford Police Department Vice and Narcotics unit developed a confidential informant (CI) who could purchase narcotics from Leggett.   On November 20, 2017, the CI contacted Leggett by phone to purchase crack cocaine.   Leggett directed the CI to the corner of Garden and Bedford Streets.   When the CI arrived, Leggett sent an associate, co-defendant Tyrell Walton, from 304 Garden Street, to deliver the crack to the CI.

On December 13, 2017, Hartford Police responded to a shots fired incident on Huntington Street in Hartford.   The victim reported that Leggett shot at her car as she drove down the street with her minor child.   According to the victim, she was targeted because she was involved in a physical confrontation with another female the previous night that resulted in a police response. Leggett was angry with the victim for bringing police to the area where he was selling drugs.   An arrest warrant was obtained for Leggett for Assault 1st degree and risk of injury to a minor.

On December 17, 2017, the CI was tasked again to contact Leggett and arrange to purchase narcotics from him.   The CI reported that s/he had seen Leggett the previous day and he was in possession of a black firearm.

On December 18, 2017, at the direction of investigators, the CI called Leggett to arrange a narcotics deal.   Leggett told the CI to meet him in the area of Garden and Bedford Streets, Hartford.   The CI was followed to 304 Garden Street where officers watched the CI enter 304 Garden Street.   About one minute later, the CI exited the building, returned to his/her vehicle and

drove to meet investigators.   The CI turned over a quantity of crack cocaine s/he purchased from Leggett.   As detectives were in the process of obtaining a search warrant for 304 Garden Street, officers observed Leggett exit the building and enter the front passenger seat of a Ford Edge. Investigators followed the vehicle onto Albany Avenue.   Investigators in an unmarked vehicle pulled alongside the Ford Edge and observed that Leggett was now seated in the rear seat, and the front passenger seat was unoccupied.   When the vehicle reached Ann Street, the Ford Edge was stopped, and multiple officers converged on the car.   Leggett was ordered to show his hands, which he did, and was removed from the car.

Protruding from the front seat pouch, where Leggett was seated, was a plastic bag with several blue wax sleeves which investigators recognized as heroin packaging.   When the pouch was pulled open, a black firearm was also observed inside the pouch.   United States currency was also observed scattered around the rear passenger area.   The suspected heroin and gun were photographed and then removed from the seat pouch.   The suspected heroin (148 bags) was subjected to a field test and tested positive for the presence of heroin/fentanyl.   The firearm, a Ruger 9 mm pistol, was loaded with 14 rounds of ammunition.   The currency was collected and totaled $655.   Leggett stated that the money was his.   A search of Leggett's person resulted in the recovery of approximately four grams of suspected crack cocaine, packaged in two separate clear knotted pieces of plastic, a digital scale and a cell phone.

The driver was also arrested and transported to HPD.   She waived her *Miranda* rights and agreed to speak with investigators.   The driver described Leggett as a friend.   Leggett called her and asked her to pick him up at 304 Garden Street.   She denied any knowledge of the drugs and gun in the car.

III.   **GUIDELINE CALCULATION**

The Government and the defendant agreed that as to Count Six the Sentencing Guideline range is five years' imprisonment, the minimum term of imprisonment required by statute.   See U.S.S.G. § 2K2.4(b).   The PSR concurred.   See PSR ¶ 89.   The defendant is also subject to a supervised release term of at least two years but not more than five years.   U.S.S.G. § 5D1.2(a)(1).

IV.   **IMPOSITION OF A REASONABLE SENTENCE UNDER 18 U.S.C. § 3553(a)**

A.   Legal Standard

Under 18 U.S.C. § 3553(a), the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."   The statute then provides:

> The court, in determining the particular sentence to be imposed, shall consider–
>
> (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)    the need for the sentence imposed—
>
>     (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>     (B)    to afford adequate deterrence to criminal conduct;
>
>     (C)    to protect the public from further crimes of the defendant; and
>
>     (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)    the kinds of sentences available;
>
> (4)    the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];
>
> (5)    any pertinent policy statement [issued by the Sentencing Commission];

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

B.      <u>Sentencing Factors in 18 U.S.C. § 3553(a)(2)</u>

1.      *Seriousness of the Offense, Respect for the Law, and Providing Just Punishment.*

Leggett is a felon and was carrying a gun while selling drugs. The seriousness of the offense is undisputed. That Congress would mandate a minimum term of imprisonment of five years is evidence of how serious our lawmakers view this conduct. A mandated prison term is for good reason. Firearms are frequently "tools of the trade" for drug dealers and are "regularly found on narcotics traffickers." <u>United States v. Reyes</u>, 353 F.3d 148, 154 (2d Cir. 2003). Moreover, "firearms are conventionally regarded as essential equipment of criminals engaged in violent crime . . . guns are without doubt the most potent and efficient instrument for violent crime." <u>United States v. Dillard</u>, 214 F.3d 88, 93 (2d Cir. 2000). "The dangerousness of guns and their adaptability to use in violent crime is why Congress has prohibited their possession by convicted felons." <u>Id.</u> Prohibiting felons from possessing firearms and ammunition is intended "to protect society by reducing the risk of violence that may result from the possession of guns by persons inclined to crime." <u>Id.</u> If there was any doubt of the how guns and Leggett do not mix, it was dispelled when Leggett fired his gun at a vehicle occupied by a woman and her minor child.

2.      *Adequate Deterrence and Protection of the Public*

There is a compelling need to protect the community from Leggett's violent and dangerous criminal conduct. His current offense occurred only two months after another firearm related

arrest.   Meanwhile, it became evident that Leggett was selling drugs while on federal and state supervision.   Less than one week before his arrest, Leggett was firing a gun into a car occupied by a women and her minor child.   When Leggett realized that his state arrest may result in his return to federal prison, he absconded from supervision.   See PSR ¶ 19.

Leggett's history on court supervision has been abysmal.   In 2006, Leggett was convicted of selling narcotics and sentenced to 20 months' imprisonment and three years' probation.   PSR ¶ 26.   He violated probation on two separate occasions.   See id.   In November 2008, he was convicted of criminal possession of a weapon and sentenced to 46 months in jail.   Id. ¶ 27.   He thereafter violated community release and returned to prison.   See id.   He was then released on supervised parole in July 2010 and resumed his drug dealing ways and was arrested by the FBI in connection with a drug related wiretap investigation.   Id. ¶ 28.   After completing that 60-month prison sentence, Leggett was released to a halfway house in North Carolina in August 2014.   See id.   After failing to report to the facility as directed, Leggett was placed on escape status and eventually located and arrested on January 30, 2015.   Id.

Leggett commenced federal supervision on February 13, 2015, and four days later tested positive for marijuana.   Id.   And five months later was arrested again by the Hartford Police for assorted charges to include assault 1st degree.   He was ultimately convicted of engaging police in pursuit and sentenced to three years in prison, suspended after one year, and three years' probation. Id.

Leggett performed poorly throughout his supervision.   In fact, it was obvious the disdain Leggett had for the rules and conditions imposed by the Court.   He missed most of his CRT sessions and failed to report for numerous drug screenings.   Id.   In May 2015, he was a victim of

a shooting, but was extremely uncooperative with the investigation.   He also failed to report to probation on numerous occasions.   After serving four additional months in federal prison for his numerous violations, Leggett returned to supervision but demonstrated the same disregard for the Court's conditions.   He began using marijuana again and "remained unemployed and had difficulty maintaining minimal requirements to include office visits and monthly reporting."   Id. In August 2017, he was arrested for assorted motor vehicle violations to include operating a vehicle while under the influence.   He was then given an opportunity to participate in re-entry court, but failed to appear at his second session and two days later, on October 7, 2017, he was arrested by Hartford Police on firearm offenses.   He was released on bond, but then absconded from supervision and failed to appear at his revocation hearing scheduled for November 6, 2017.

Leggett's offense conduct and utter disregard for the law leave no doubt that protection of the community and specific deterrence are the principal factors in determining his sentence.

### 3.   *Educational and Vocational Training, and Medical Care and Treatment*

The defendant has a long history of drug use, with marijuana and alcohol his drugs of choice.   PSR ¶ 58.   More recently, Leggett reported daily use of Percocet.   Id. ¶ 60.

A noted above, Leggett was shot in his wrist in 2015, causing him ongoing physical limitations in the rotation of his wrist and use of some of his fingers.   Id. ¶ 56.   Leggett denies any mental illness, though he previously received counseling as well as anger management counseling.   Id. ¶ 66.

Leggett earned his diploma in 2006 while incarcerated.   Id. ¶ 71.   At the same time, he also earned a carpentry certificate.   Id. ¶ 73.   Leggett's employment history is sporadic.   Id. ¶ 74, *et seq*.   He last worked in 2015.   Id. ¶ 75.

V.    **SUMMARY AND CONCLUSION**

Leggett described himself as a "smart person who made some wrong decisions" including his decision to make "fast money" by selling drugs.   See PSR ¶ 69.   Leggett's conduct, however, is considerably more serious and dangerous than "some wrong decisions."   Reviewing his history, including his performance on supervised release, begs the question of when did he make right decisions.   He was not just selling drugs.   He was carrying and using a firearm in furtherance of selling drugs.   He was firing a gun at a woman and her child who had the audacity to bring the police to Leggett's drug territory.   He was repeatedly failing to follow the conditions of his supervised release to the point when he just stopped reporting.   He was given numerous opportunities to obtain treatment, get a job, and learn a trade.   But he rejected every opportunity to change.   He never intended to leave the street life.   Leggett was not just stumbling along making harmless mistakes.   He was representative of what many in our inner city communities fear the most.   The armed drug dealer who is not afraid to use his gun.   For Leggett, violence was just a matter of time and opportunity.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/ *Brian P. Leaming*
BRIAN P. LEAMING
ASSISTANT UNITED STATES ATTORNEY
450 Main Street, Room 328
Hartford CT 06103
(860) 947-1101
Federal Bar No. CT 16075

8

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on January 23, 2019, a copy of the foregoing Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.   Parties may access this filing through the Court's CM/ECF System.

*/s/ Brian P. Leaming*
BRIAN P. LEAMING
ASSISTANT UNITED STATES ATTORNEY
